**In re WANER CORPORATION, Debtor.**

**Bankruptcy No. 87 B 15541.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Dec. 20, 1991.

Howard L. Adelman, Adelman, Gettleman & Merens, Michael Daley, Robert T. Oleszkiewicz, Daley & George, Ltd., Chica-

go, for Sheet Metal Workers Intern. Ass'n, Local 73.

Terry J. Malik, King E. Poor, Winston & Strawn, Chicago, for debtor.

Andrew J. Maxwell, Steven S. Potts, Maxwell and Perlstein, Chicago, trustees.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON CLAIM OF LOCAL 73

JACK B. SCHMETTERER, Bankruptcy Judge.

### Introduction

The Debtor Waner Corporation was formerly engaged in heating and ventilation work. Its former employees are members of Sheet Metal Worker's International Association Local 73 ("Local 73"). Debtor's bankruptcy proceeding pends under Chapter 7 of the Bankruptcy Code. Debtor's estate is administered by a Chapter 7 Trustee.

Local 73 has moved for immediate payment of the priority wage and benefit claims of its members who formerly worked for Debtor. Local 73 earlier received part of those wages and benefits from third parties on claims filed on behalf of these workers under the Illinois Mechanics Liens Act, and on performance bonds. The Trustee Andrew Maxwell ("Trustee") argues that the amounts thereby collected for each former employee reduce the priority part of that worker's claim for distribution in bankruptcy under 11 U.S.C. § 507.

The Trustee does not otherwise object to the Local 73 claims.

The parties stipulated to all facts deemed by them to be relevant, the stipulation was admitted into evidence, and each party waived the right to offer any further evidence. Based upon that record and the argument of counsel, the motion is allowed and the Court now makes and enters the following Findings of Fact and Conclusions of Law on which allowance rests.

## FINDINGS OF FACT

1. On October 21, 1987, Waner Corporation (the "Debtor") filed a voluntary case under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "Chapter 7 Case"). It formerly contracted for heating and air conditioning work in Illinois.

2. Subsequent to the filing of the Chapter 7 Case, Andrew J. Maxwell was appointed interim Trustee and thereafter permanent Trustee. Mr. Maxwell duly qualified and is now acting as Trustee of the estate of Waner Corporation.

3. On April 19, 1988, Local 73 timely filed a proof of multiple claims for wages, salary, commissions and employee benefits, a copy of which is attached hereto as Exhibit A and by this reference made a part hereof. [Editor's Note: Exhibit A has been omitted from publication.] The proof of claim is summarized as follows:

| | |
|---|---:|
| Unpaid wages for the period of October 3, 1987 through October 21, 1987 (37 men) | $ 64,324.60 |
| N.S.F. charges for returned payroll checks | 1,850.00 |

Fringe Benefit Contributions, September, 1987:

5136.75 hours—37 men

| | |
|---|---:|
| WELFARE | 11,095.38 |
| PENSION | 5,078.40 |
| APPRENTICE | 359.57 |
| SAVINGS | 2,311.98 |
| INDUSTRY | 565.04 |
| NATIONAL TRAINING | 513.67 |
| NATIONAL PENSION | 3,698.46 |
| POLITICAL ACTION | 22.55 |
| | 23,645.05 |

Assessments: 15% Assessment on
September Fringe Benefits =                    $3,458.61

    Total Contributions and Assessments
    for September, 1987 =                              $ 27,103.66

Fringe Benefit Contributions,
October, 1987:

        4836.00 hours—37 men

| | |
|---|---|
| WELFARE | 10,445.76 |
| PENSION | 4,951.03 |
| APPRENTICE | 338.52 |
| SAVINGS | 1,183.19 |
| INDUSTRY | 531.96 |
| NATIONAL TRAINING | 483.60 |
| NATIONAL PENSION | 3,099.78 |
| POLITICAL ACTION | 11.51 |
| | 21,045.35 |

Assessments: 15% Assessment on
October Fringe Benefits =                      $3,075.28

    Total Contributions and Assessments
    for October, 1987 =                                $24,120.63
    TOTAL PRIORITY CLAIMS                        $117,398.89

---

4. Subsequent to filing of this Chapter 7 Case, Local 73 representatives filed mechanics lien claims under Illinois law to recover certain wages and benefits due and owing from the owners or general contractors who initially employed Waner Corporation in connection with heating and air conditioning work. Additionally, Local 73 sought recovery under one or more bonds for recovery of wages and benefit due and owing. This Court granted the motion of Local 73 for the modification of the automatic stay, allowing Local 73 to perfect and prosecute its respective bonds and mechanics liens.

5. As a result of the mechanics lien and bond claims, Local 73 was able to collect on behalf of its members the total sum of $55,280.43, and said sum has been distributed to members of Local 73 as described on Exhibit B attached hereto and by this reference made a part hereof. [Editor's Note: Exhibit B has been omitted from publication.]

6. The Trustee contends that there remains due and owing on the Local 73 Wage and Benefit Claim the sum of $49,165.42. Local 73 contends that there remains due and owing on the Local 73 Wage and Benefit Claim the sum of $50,608.48. The Trustee and Local 73 stipulated to split the difference between those amounts. It was thereby stipulated that there remains due on that claim the total amount of $49,-886.95. The unpaid Local 73 Wage and Benefit Claim includes unpaid wages in the amount of at least $9,656.50 as described on Exhibit C, attached hereto and by this reference made a part hereof, and benefit claims including savings plan contributions in the amount of at least $39,508.92 (collectively the "Unpaid Local 73 Wage and Benefit Claim").[1] [Editor's Note: Exhibit C has been omitted from publication.]

## CONCLUSIONS OF LAW

1. This Court has core jurisdiction over claim disputes. 28 U.S.C. § 157(b)(2)(B).

2. Claims filed in bankruptcy proceedings are presumed valid as to liability

---

**1.** The foregoing stipulated amounts total only $49,165.42, the total originally asserted by the Trustee, not the total of $49,886.95. The Order entered this date has been drafted by the parties to deal with available funds in accord with the Court's previously announced ruling.

and amount unless the Debtor or other party-in-interest objects and demonstrates some objection thereto. 11 U.S.C. § 502(a). Since the Trustee raised no objections to the amount of and liability for the original claim of Local 73 on behalf of its members, that claim is allowed with such priorities as are provided under 11 U.S.C. § 507(a)(3) and (4).

### Claimant's Rights under Illinois

■ 3. Moneys were collected by Local 73 from third parties on the mechanics liens claims filed on behalf of the Debtor's former employees, and on bonds posted for asserted benefit of the laborers. The Trustee argues that those funds should go to reduce the wage priority claims of those employees who received portions thereof, against distribution out of this estate for priorities under 11 U.S.C. § 507. That argument assumes that Trustee had rights to collect on the bonds and mechanics liens claims filed on behalf of the employees. However, this assumption is flawed. First, the Trustee has not shown any evidence or authority to suggest that Debtor or he had any rights at all under the bonds in question. Second, rights in the employees' mechanics liens claims belonged under Illinois law only to those employees, not to Debtor and therefore not to the Trustee. Not only did Trustee not collect on those mechanics liens, but he had no right to do so. The proceeds of those liens claims were not property of the bankruptcy estate and could not become estate property.

■ 4. Employees of a contractor or a subcontractor may file liens under § 21 of the Illinois Mechanics Liens Act, Ill.Rev. Stat. ch. 82, ¶¶ 1–39. Section 21 states,

Subject to the provisions of section 5, *every mechanic, worker or other person* who shall furnish materials, apparatus, machinery, or fixtures, or *furnish or perform services or labor* for the contractor ... shall be known under this act as a sub-contractor, and shall have a lien for the value thereof ... on the same property as provided for the contractor ... on the moneys and other considera-

tions due from the owner under the original contract.... (emphasis added).

Illinois state courts have interpreted § 21 to allow employees to file liens under this Act. *Stepuncik v. Michalek*, 67 Ill.App.3d 440, 23 Ill.Dec. 732, 384 N.E.2d 526 (1978); *Malicki v. Holiday Hills, Inc.*, 30 Ill. App.2d 459, 174 N.E.2d 915 (1961). Furthermore, several other sections in the Act recognize the right of employees to file mechanic's liens for unpaid wages. Section 15 states "the claim of any person for wages by him personally performed shall be a preferred lien." This preference is reinforced by § 19 ("the claims of all persons for labor as provided in Section 15 of this Act shall first be paid") and § 26 ("the claim of any person for wages as a laborer under sections 15, 21 and 22 of this act shall be a preferred lien"). Section 16 states "no incumbrance upon land ... shall operate upon buildings erected, or materials furnished until a lien in favor of the persons having done work or furnished material have been satisfied."

5. Employers have no rights in liens filed by their employees. It is well established that the Act must be strictly construed with reference to all the statutory requirements upon which the right to a lien depends. *M.L. Ensminger Co., Inc. v. Chicago Title & Trust Co.*, 74 Ill.App.3d 677, 30 Ill.Dec. 627, 393 N.E.2d 663 (1979). Under the Act, a potential lienor must comply with several requirements. An employer who has done nothing but claim an interest in its employee's lien clearly has not complied with the requirements such as giving notice to the owner or filing the lien with the proper county office. Mech. Liens Act, § 21. Therefore, the Act itself denies the employer any rights in his employee's lien because of the employer's own non-compliance with requirements of the Act.

The Act contemplates that each lien is personal to the party that filed it because it sets out a system of preferences for the payment of different mechanic's liens. Sections 15, 19 and 26 each reinforce the other provisions in granting laborers' mechanics liens priority over all other mechanics liens. Finding that an employer has an interest in its employees' liens would de-

stroy this preference scheme. Such a finding would force the employees to share the proceeds of their liens with the employer in derogation of their priority rights under sections 15, 19 and 26. The statutory language bars such a result.

The whole purpose of granting laborers the right to file mechanic's liens is to give them an additional remedy in case their employer does not pay them. It works by allowing them to collect funds from the property owner if the employer does not pay their wages. State law does not allow an employer who does not pay wages to benefit from this breach by gaining an interest in the lien which was specifically created to protect employees in such a contingency. The liens filed by employees are free and clear under state law of any employer's interest.

6. Since Debtor had no interest in the liens filed by its employees, those liens cannot be property of the employer's bankruptcy estate, and money collected on the liens was not property of Debtor's estate. Therefore, collection on the liens should have no bearing on the allowance of the instant priority claim in bankruptcy. The fact that this might lead to different treatment among the various creditors is irrelevant. It is not novel to find secured creditors coming out better in bankruptcy than other creditors, and there is nothing unjust in this result.

■ 7. Under bankruptcy law, a laborer who perfects a mechanics lien claim is a secured creditor entitled to receive proceeds of his lien. If a deficiency then remains that creditor is to be paid out of estate funds in accordance with the priorities as established under § 507 of the U.S. Bankruptcy Code.

The distinction between a claim entitled to priority under section 507(a)(3) and a lien upon the assets of the debtor's estate is especially important, for the laws of many states create liens for wages due. *Generally, these and all other liens should be fully satisfied before any payment can be made out of the debtor's estate unless the lien was avoided pursuant to Section 545.*

*A further distinction must be made between state laws creating liens for wages due, and those which provide merely for priority in liquidation proceedings. If a lien for wages is created by the laws of a state it should be entitled to payment ahead of all priorities in section 507(a) unless avoided pursuant to section 545.* On the other hand, if the state law merely provides for priority of payment for the wage claim, not making the claim a lien, it will have no effect whatsoever upon the order of payment. (Emphasis supplied) 3 *COLLIER ON BANKRUPTCY* ¶ 507.04[d] p. 507–24–25 (15th ed. 1990).

Thus, once all mechanics lien recoveries are fully satisfied, any deficiencies will be treated and paid in accordance with the scheme of the U.S. Bankruptcy Code.

In the case at hand mechanics liens were properly filed and perfected on behalf of the workers under Illinois law. Recoveries thereupon were made in accord with Illinois law. Those recoveries were not property of the estate. Therefore, the Unpaid Local 73 Wage and Benefit Claim should be paid out of estate funds in accord with treatment under Section 507(a)(3) and (4) priorities. The estate and its creditors may not get a benefit or credit for collection by the laborers of moneys on their own lien and bond claims.[2]

2. The foregoing analysis is further supported by comparing priority claims with lien rights. As stated in *Collier on Bankruptcy:*

Assets of a debtor in the trustee's hands are subject to all of the equities, liens and encumbrances in favor of third persons that exist at the date of bankruptcy and are not invalidated by the law. Thus, liens which arose before bankruptcy and are not invalidated are recognized as a charge upon the assets. Certain other classes of liens arising even after bankruptcy may also be valid against a trustee. At the time for distribution, therefore, the trustee may find that much of the property of the estate is encumbered by still-valid liens. These liens, with certain exceptions, must be satisfied in full before any payment of dividends to unsecured creditors or administrative expenses can be made. Only after the discharge of valid liens and encumbrances are assets available for distribution to priority

In this case the claims for unpaid wages and benefit claims for 37 employees will be satisfied under Section 507(a)(3) and (4) of the Code, to the extent cash is available after administrative claims are paid.

## CONCLUSION

For the foregoing reasons, the Motion of Local 73 to Compel Allowance and Immediate Payment of Priority Wage and Benefit Claims is allowed. Counsel will present an order in accord with this ruling.

claimants.  3 *COLLIER ON BANKRUPTCY*  ¶ 507.03[a] p. 507–14–15.